The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. At the time of the alleged injuries by accident, the parties were subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff.
3. Interior Distributors, Inc. was a self-insured employer.
4. Plaintiff's average weekly wage was $189.96.
5. (I.C. 528087) On November 10, 1994 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
In addition, the parties stipulated into evidence a packet of medical records and reports.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. In November 1994 plaintiff was employed by defendant as a delivery person. He worked on a crew which would deliver acoustical tile, cement, sheet rock and other interior construction supplies. Although the truck was loaded with a forklift, the items would be unloaded by hand at the delivery site.
2. On November 10, 1994 plaintiff sustained a compensable injury when he lifted a heavy bag of gypsum cement at a delivery site and experienced the sudden onset of back pain. He was unable to continue lifting the bags and rested. He then stayed with his crew until they returned to the office. The injury was not reported to Kenneth Caison, the manager, until the next day when a co-employee took plaintiff to the office and told Mr. Caison about what had happened. Plaintiff insisted that he was just sore and he did not need to see a doctor at that time. He worked a full schedule on that date, which was a Friday. However, on Monday he neither reported for work nor called into the office. A woman called in for him on Tuesday, and late that night he went to the emergency room.
3. Plaintiff was seen by the emergency room physician early in the morning of November 16, 1994. He was given a prescription for pain medicine and instructions for two days of bed rest. He was also told to follow-up with his doctor if the pain persisted. The pain did continue so on November 21, 1994 he saw Dr. Arensman, a family physician. Dr. Arensman kept him out of work for two weeks, prescribed anti-inflammatory medication and a muscle relaxer and referred him for physical therapy. Mr. Caison happened to see him at the hospital when he was there for a physical therapy session and learned for the first time that he had been out with back problems from the injury at work. Mr. Caison then instructed him on what he should do so that a report of injury could be prepared, but he did not follow-up as instructed. He was apparently a very poor communicator.
4. On December 7, 1994 plaintiff reported to defendant's office with a note allowing him to return to work at light duty. Mr. Caison had previously terminated his employment and had replaced him since he had not reported for work or called in for so long. However, he was advised to check with Mr. Casion once the doctor released him for full duty to see if a job would be available.
5. On December 19, 1994 plaintiff reported to Dr. Arensman that his pain was completely resolved and he was ready to return to work. Dr. Arensman gave him a note releasing him to return to work without restrictions but also advised him to avoid strenuous physical activity for the next two to three weeks. Mr. Caison rehired him on December 20 and gave him light work to do. Plaintiff then worked for the company until December 27. On that date, one of the dispatchers told him to help Clinton Taylor stack some bundles of metal rods which were out in the yard. As plaintiff was helping to lift one of the bundles, he again developed severe back pain. Mr. Taylor instructed him to report the injury and sent him to the office.
6. Apparently plaintiff said something to someone in the office but whatever was said did not communicate the fact that he had reinjured himself, and nothing was done to help him. On December 29 he saw another doctor at Dr. Arensman's office who referred him back to physical therapy. He returned to Dr. Arensman after a period of physical therapy on February 15, 1995 feeling better, so the therapy was continued. However, by the time of his next office visit on March 23, he developed neurologic signs which could be indicative of a lumbar disk problem, so Dr. Arensman referred him to Dr. Hardy, a neurosurgeon.
7. Dr. Hardy examined plaintiff on April 6, 1995 and ordered a CT scan. The test revealed a small asymmetrical protrusion to the right at L4-5 which was indenting the dural sac. Apparently Dr. hardy was not satisfied with the CT scan and wanted plaintiff to undergo a myelogram, but defendant would not pay for the procedure. Consequently, plaintiff had not had it as of the date of hearing. He did not return to Dr. Hardy after April 26 but followed up with Dr. Arensman on May 8, 1995 and with another doctor in that office on August 9, 1995. As of the last visit, he was continuing to complain of back and leg pain, but his neurologic symptoms had improved. Not having insurance, he could not afford further medical treatment so even though his back pain persisted until the date of hearing before the Deputy Commissioner, he did not return to the doctor.
8. As a result of his November 10, 1994 injury by accident, plaintiff's L4-5 disk was weakened. When he returned to work and regular activity, his condition worsened. Although he sustained a specific traumatic incident of the work assigned when he lifted the bundle of rods on December 27, 1994, the resulting pain was simply an exacerbation of his earlier injury in November. Consequently, the condition for which he was treated beginning December 29, 1994 was a direct and natural result of his November 10, 1994 injury by accident.
9. Plaintiff was unable to work and earn wages from November 14 through December 19, 1994 and from December 28, 1994 through the date of hearing as a result of his November 10, 1994 injury by accident. He had not reached maximum medical improvement as of the date of hearing before the Deputy Commissioner.
10. Although plaintiff sustained a second injury at work on December 27, 1994, he did not notify his employer of that injury. In fact, he later advised defendant that the injury occurred on November 27, 1994, a day that he was not at work, because he was not good at remembering dates. Defendant did not learn of the correct date until he testified at the hearing. Failure to give written notice of the second injury within the time allowed by statute would have prejudiced defendant. However, since the subsequent disability and medical treatment related back to the earlier injury, the issue is moot.
11. This claim was not defended unreasonably.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The disabling back condition for which plaintiff was treated beginning December 29, 1994 was a direct and natural result of his November 10, 1994 injury by accident. Vandiford v.Stuart Equipment Co., 98 N.C. App. 458 (1990).
2. (I.C. 528087) Plaintiff is entitled to compensation at the rate of $126.64 per week for 100 and 4/7 weeks for the temporary total disability he sustained as a result of this injury by accident through the date of hearing before the Deputy Commissioner on October 25, 1996, and continuing thereafter for as long as he remains so disabled. N.C. Gen. Stat. § 97-29.
3. (I.C. 528087) Plaintiff is entitled to have defendant provide all medical compensation arising from this injury by accident, including the treatment rendered for his back condition after December 27, 1994 and any necessary future treatment. N.C. Gen. Stat. § 97-2(19); N.C. Gen. Stat. § 97-25.
4. (I.C. 669602) Although plaintiff sustained a specific traumatic incident of the work assigned on December 27, 1994, there were no compensable consequences to that incident. The condition for which he was subsequently treated related back to the earlier injury in November. N.C. Gen. Stat. § 97-2 et seq.
5. Plaintiff is not entitled to have attorney's fees assessed against defendant since the claim was defended with reasonable grounds. G.S. § 97-88.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. (I.C. 528087) Defendant shall pay compensation to plaintiff for temporary total disability at the rate $126.64 per week for 104 and 4/7 weeks for his disability through October 25, 1996, and continuing thereafter for as long he remains so disabled. That portion of this compensation which has accrued shall be paid in a lump sum. This award is subject to the attorney's fee hereinafter approved.
2. (I.C. 528087) Defendant shall pay all medical expenses incurred by plaintiff as a result of this injury by accident, including those arising from any necessary future treatment.
3. (I.C. 669602) Plaintiff's claim for workers' compensation benefits is hereby DENIED.
4. An attorney's fee in the amount of twenty-five percent of the compensation awarded is approved for plaintiff's counsel. He shall receive a lump sum from the accrued compensation and shall thereafter receive every fourth check.
5. Defendant shall pay the costs.
This the ___ day of May 1998.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________________ THOMAS J. BOLCH COMMISSIONER
S/ ______________________ KIM CRAMER DEPUTY COMMISSIONER